NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JADWIGA WARWAS<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF PLAINFIELD,<br><br>    Defendant. | Civil Action No.: 07-4431 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge

   This matter comes before the Court on Plaintiff's motion for summary judgment filed by Defendant City of Plainfield.  Plaintiff alleges, *inter alia*, that Defendant interfered with the rights guaranteed to her by the Family and Medical Leave Act of 1993, 29 U.S.C. 2601, et. seq., (the "FMLA") by suspending her while on leave and ultimately terminating her employment. The Court has considered the parties submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.  For the reasons set for below, Count I of Plaintiff's Complaint, Interference with FMLA Leave, is dismissed for lack of subject-matter jurisdiction; and, Defendant's motion for summary judgment as to the remaining count, retaliation pursuant to 42 U.S.C. § 1983, is granted.

**I.    BACKGROUND**

   Plaintiff Jadwiga Warwas is a licensed health officer and medical doctor.  Second Amended Complaint ("Compl.") ¶ 3.  Defendant City of Plainfield hired Plaintiff as a Manager of the Health Division on October 1, 2003.  Brief in Support of Motion for Summary Judgment

in Favor of Defendant ("Def. Brief") ¶ 1. At the time of her hiring, Plaintiff was employed by the City of Paterson as a part-time Quality Assurance Coordinator and by the Passaic Health Department as an Epidemiologist. (Compl. ¶ 14.) Upon acceptance of Defendant's offer, Plaintiff resigned her position with the Passaic Health Department, but retained her job with the City of Paterson because, according to Plaintiff "that position did not require her presence in Paterson and had flexible work hours." (Id. ¶ 14.) Rather, Plaintiff's position with the City of Paterson only required her to respond to medical inquiries that were e-mailed to her home computer. (Id. ¶ 16.)

On July 24, 2006, Plaintiff's primary care physician, Eugene M. DeSimone, M.D. faxed a note to Karen Dabney, personnel director for the City of Plainfield, indicating the Plaintiff had a personal health problem and would be unable to work from July 24, 2006 until August 8, 2006.[1] (Def. Brief ¶ 2.) In the health certificate, Dr. DeSimone indicated that Plaintiff was "restricted to home and could not work/attend school." (Id. ¶ 4.) In response, Ms. Dabney sent a letter to Plaintiff confirming receipt of her doctor's note and attaching a copy of a notice advising Plaintiff of her rights under the FMLA. (Id. ¶ 3.) Defendant's FMLA leave policy requires employees who have accumulated sick leave or vacation to exhaust same before the City will convert the FMLA leave to unpaid status. (Compl. ¶ 13.)

During her leave, Plaintiff was paid a total of $8,211, which represented 178.5 hours of sick time. (Def. Brief at Ex. 5.) However, throughout her leave, Plaintiff was also working for the City of Paterson as a Quality Assurance Coordinator. (Id. ¶ 7.) Plaintiff's work records from

---

[1] Plaintiff later provided subsequent Health Certificates extending her anticipated date of return until September 22, 2006. Def. Brief at Ex. 3.

Paterson indicate that between July 24, 2006 and August 29, 2006 Plaintiff worked 109 hours. (Id. at Ex. 6.)  Defendant maintains that Plaintiff never informed the City of Plainfield of her employment with Paterson, nor did she request Defendant's consent to accept additional employment.  (Id. at ¶ 9.)   However, Plaintiff contends that this information was provided to Defendant in her resume that she supplied to Defendant and was discussed in her second interview with Plainfield.  See Certification of Stephen E. Klausner ("Klausner Cert.") at Ex. K, p. 204.

> Pursuant to Section 11:11-2 of the Plainfield Municipal Code,
>
> (a) Employees shall not accept outside employment or engage in outside business activities without the prior and continued approval of the Department Director.  Applications for permission to accept outside employment shall be made in writing to the employee's division head who shall forward the same with his recommendation to the Department Director.
> (b) The application shall set forth pertinent information concerning the type of employment to be engaged in, the name and address of the prospective employer, and the hours of such employment
> (c) No application for permission to accept outside employment or engage in outside business activities shall be approved by the Department Director if, in his judgment, there is any reasonable probability that:
> (1) Such outside employment will interfere with an employee's performance or compromise and employee's position with the City through a conflict of interest; or,
> (2) If such employment shall exceed twenty (20) hours per week

See Def. Brief at Ex. 7.  Defendant alleges that, at the time of Plaintiff's hire, the Employee Handbook in effect stated:

> Outside employment or engaging in outside business without the prior and continued approval of the department director is prohibited.  Applications for permission to accept outside employment shall be made in writing to the division who will forward same with a recommendation to the department director.

See Def. Brief at Ex. 8.  Plaintiff testified that she was never provided with a copy of the

municipal code in its entirety nor a copy of the original handbook. (Klausner Cert. at Ex. K. p. 76.) Ms. Dabney testified that the original handbook contained the Ordinance and was provided to Dr. Warwas at her employment orientation (Klausner Cert. at Ex. K, p. 58); however, Plaintiff testified that she never attended an orientation. (Klausner Cert. at Ex. X, p. 76.)

On March 15, 2004, Defendant adopted a revised Employee Handbook. (Def. Brief ¶ 12.) With respect to the outside employment, the revised Employee Handbook provides as follows:

> Employees are allowed to hold outside employment as long as it does not interfere with their City job responsibilities. Employees are prohibited from engaging in outside employment activities while on the job or using City time, supplies or equipment in the outside employment activities. The Department Director with the authorization of the City Administrator may request employees to restrict outside employment if the quality of the employee's work diminishes. Any employees who holds an interest in, or is employed by, any business doing business with the City of Plainfield must submit a written notice of these outside interested to their Department Director.

See Def. Brief at Ex. 10. Plaintiff admits receiving the revised Handbook, but maintains that she did not violate any of the provisions as she did not use City time, supplies or equipment for her outside employment. Plaintiff's Response to Defendant's Statement of Uncontested Facts ("Pl. Response") ¶ 12.

When Defendant discovered that Plaintiff was working for the City of Paterson while on paid sick leave, Plaintiff was served with a Preliminary Notice of Disciplinary Action for (1) insubordination or serious breach of discipline; and (2) conduct unbecoming an employee, and defendant sought to terminate plaintiff's employment as a Health Officer. (Def. Brief at Ex. 12.) A disciplinary action hearing was held on September 30, 2006. The Hearing Officer, Martin Helliwig, sustained the charges and found that termination was justified. (Def. Brief at Ex. 13.)

Plaintiff appealed the decision to the Merit System Board and the matter was transferred to the Office of Administrative Law. (Def. Brief ¶ 16.) The Honorable James A. Geraghty, A.L.J., found in favor of plaintiff and concluded that she did not commit any misconduct. Id. Judge Geraghty further recommended that Plaintiff be reinstated. (Id.) The ALJ's findings of fact states that Plaintiff was using sick and vacation days during her FMLA leave and thus could use her time freely. See Pl. Response ¶ 16.

Exceptions were filed and the matter was reviewed by the Merit System Board ("MSB"). The MSB disagreed with Judge Geraghty and found Plaintiff guilty of conduct unbecoming an employee. (Def. Brief ¶ 17.) However, the MSB found the penalty of removal too harsh and modified same to an official written reprimand and an 109 hour fine, the amount of hours that she was paid for by the City of Paterson while on leave. (Id. ¶ 19.) The MSB ruled that Plaintiff was entitled to back pay, benefits, reinstatement, and seniority for the period following her removal. (Def. Brief at Ex. 15.) Plaintiff was ordered by the MSB to provide proof of her income earned at Paterson in order to calculate the amount of back pay to be paid by the Defendant. However, a letter from the MSB dated July 9, 2008 states that Plaintiff failed to provide such proof. The letter, addressed to Stephan Klausner, required Plaintiff to provide the following documentation within ten days of the receipt of this letter: (1) average number of hours worked per week with the City of Paterson prior to July 25, 2006; (2) the number of hours worked per week with the City of Paterson for the period of November 24, 2006 through December 31, 2006; (3) the number of hours worked per week and the hourly rate of pay with the City of Paterson in 2007; (4) the number of hours worked per week, the hourly rate of pay, and her total income earned from January 1, 2008 through the date of her reinstatement; and (5) a

detailed description of any mitigation efforts made by Ms. Warwas during the period of her separation, i.e. names, addresses, and dates of contact and/or application with prospective employers to replace her employment with Plainfield.  (Def. Brief at Ex. 16.)  According to Defendant, this matter was closed as of July 19, 2008.  (Def. Brief ¶ 20.)

Plaintiff disputes to whom she was supposed to provide the required proof as well as the allegation that she failed to do so.  Rather, she states that the MSB decision actually required her to submit proof of earnings directly to Defendant.  (Pl. Response ¶ 20.)  She says she forwarded to Defendant's attorney all work sheets that she could obtain from Paterson for the period of August 26, 2006 through November 24, 2006, and a W-2 from the City of Paterson for calendar year 2007.  (Pl. Response ¶ 20.)  Plaintiff maintains that her hourly rate for 2006 was already in Defendant's possession.  Accordingly to Plaintiff, "the three months that Plaintiff worked in 2008, for inexplicable reasons could not be readily obtained from Paterson."  (Pl. Response ¶ 20.)  Review of the MSB decision reveals that Plaintiff was ordered to submit "proof of income earned . . . to the appointing authority within 30 days of issuance of [the] decision."  (Def. Brief at Ex. 15.)

In accordance with the MSB's order, it was agreed between the parties that Plaintiff would return to work on March 24, 2008.  (Def. Brief ¶ 21.)  According to Defendant, Plaintiff failed to report to work on the agreed upon date.  (Def. Brief at Ex. 17.)  Plaintiff denied that she failed to report to work, but rather claims that she received a phone call from Karen Dabney on March 21, 2008 informing her that her former office was unavailable for use and that she should not report until April 7, 2008.  Ms. Dabney testified that she did not remember this phone call. (Klausner Cert. at Ex. B, p. 4.)

Plaintiff reported to work on April 7, 2008; however, her office was not ready as it was being used for storage at the time. (Def. Brief ¶ 22.) Accordingly, Plaintiff was advised to return two days later on April 9, 2008, and that the City of Plainfield would pay her for the two days. (Def. Brief ¶ 22.) Plaintiff claims she was never paid. (Pl. Response ¶ 22.)

On April 8, 2008, at 5:45 p.m. Plaintiff wrote an e-mail to Ms. Dabney asking if there were any changes to her scheduled return date of April 9, 2010. Ms. Dabney replied the following morning and advised Plaintiff that she was expected to come into work that day. Plaintiff wrote back that she would not be returning to work until she was paid back pay. That day, David Minchello sent a letter to Mr. Klausner informing him that his client had not received back pay because Defendant had not received "proof of income" for the period during which Plaintiff was on leave from her position as was required by the Merit System Board. Mr. Minchello also advised Mr. Klausner that the City of Plainfield expected Dr. Warwas to return to work on April 14, 2008.

On April 12, 2008, Dr. Warwas sent Ms. Dabney an e-mail stating that she had planned to take a vacation during the week of April 14, 2008 and wanted to know how much vacation time she had accrued. (Pl. Response ¶ 25.) She did not receive a response from Ms. Dabney. Id. Defendant contends that Plaintiff failed to report to work on April 14 (Def. Brief ¶ 25), but Plaintiff asserts that she did report to work on that day, but was told by the Ms. Dabney that her office was still not ready and that she should take a vacation. (Pl. Response ¶ 25.)

Defendant set April 21, 2008 as Plaintiff's new return date. Plaintiff was further advised that if she did not report for duty on April 21st, Defendant would seek termination for job abandonment. In anticipation of her return, Defendant alleges that Mr. Dashield prepared a

welcome memorandum for Plaintiff. (Def. Brief ¶ 27.) Plaintiff reported to work on April 21, 2008, but according to Defendant, when Mr. Dashield attempted to provide Plaintiff with the welcome memorandum at 1:30 p.m., she could not be located from that point on for the remainder of the workday. (Def. Brief ¶ 28.) Plaintiff claims that at 11:00 a.m. on April 21, 2008, she was told by the City's administrator, Marc Dashield, to "hold on" before conducting the meetings she claims she planned to conduct with health department personnel and that she should "wander around until the Director of Finance and Administration comes back from his vacation in three or four days." (Pl. Response ¶ 26.) Plaintiff does not indicate when she left the office on April 21, 2008. Defendant states that later that day Mr. Dashield sent Plaintiff a memorandum advising her that she was on "unauthorized leave without pay." (Def. Brief ¶ 28.) Plaintiff denies receiving this letter. (Pl. Response ¶ 27.)

      Defendant alleges that Plaintiff never returned to work once she left on April 21, 2008. Plaintiff claims that she returned to the office on April 22, 2008. (Def. Brief ¶ 30.) Again, she states that her office was locked and her key did not fit in the door. Plaintiff states that she wandered around the "closed office" looking for any desk space to be able to start working, but found none and was thus subjected to humiliation "in front of her subordinates." (Pl. Response ¶ 30.) She further states that at 12:15 p.m. that day she went to the police department to report that she was being prevented from working at the Health Department. (Pl. Response ¶ 30.)

      Plaintiff's Second Amended Complaint alleges: (1) interference with Plaintiff's right to FMLA leave (Count I); and (2) violation of the First Amendment pursuant to 42 U.S.C. 1983 (Court II). (CM/ECF No. 36). Defendant now moves for summary judgment as to both counts. (CM/ECF No. 38).

**II.     LEGAL STANDARD**

A court shall grant summary judgment under Rule 59(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party. To present evidence that a genuine issue of material fact compels a trial. Id. at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact and may not simply rely on unsupported assertions, bare allegations, or speculation. See Ridgewood Bd. of Educ. v. N.E. ex. rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). Also, the Court must consider all facts presented and the reasonable inference drawn in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbit, 63 F.3d 231, 236 (3d Cir. 1995).

**III.    DISCUSSION**

    **A.     Count I: Interference with Plaintiff's FMLA Leave**

        1.     Rooker-Feldman Doctrine

The Rooker-Feldman doctrine precludes district courts from exercising appellate jurisdiction over state court judgments unless Congress has specifically authorized such relief. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). In other words, the doctrine precludes federal courts from reviewing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine is narrow in that it applies only when a plaintiff asks a district court to redress an injury caused by the state court judgment itself, and not merely when a plaintiff seeks to relitigate a claim or issue already litigated in state court. Id. at 292-93. However, the Rooker-Feldman doctrine does not preclude review of determinations made by state agencies. Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 644 n.3 (2002) ("The [Rooker-Feldman] doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency.").

Even if the doctrine applied to the review of state agency determinations, this case would not satisfy the elements necessary to invoke the Rooker-Feldman doctrine. There are four requirements that must be met for the Rooker-Feldman doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great Western Mining & Mineral Co. v. Fox Rothchild LLP, 2010 WL 3035466 at *4 (3d Cir. Aug. 5, 2010). In the instant action, Plaintiff brings claims for interference with her FMLA leave and violation of her first amendment rights. During the administrative proceedings, the MSB reviewed Defendant's claim that Plaintiff was guilty of insubordination and conduct unbecoming an employee. The fact that the adjudication of both the state agency claim and the instant federal claim require analysis of the same set of facts does not preclude litigation of the instant claims under the Rooker-Feldman doctrine. In order to invoke the Rooker-Feldman doctrine, Plaintiff must try to relitigate the same claims in an attempt to repair the injury of a state court judgment.

In this case, the MSB "could not and did not adjudicate the merits of [Plaintiff's federal] claims," rather, the MSB adjudicated a different set of claims initially brought by Defendant. See Gulla v. North Strabane Township, 146 F.3d 168, 173 (3d Cir. 1998).

Further, Plaintiff is not a "state-court loser" for purposes of the application of the Rooker-Feldman doctrine. While the MSB found Plaintiff guilty of "conduct unbecoming a public employee," it also determined that removal was too harsh a penalty and ordered that Plaintiff be reinstated, with back pay and seniority. Thus, not only is the Plaintiff not litigating the same claims, she is actually asking this Court to enforce the state court judgment, not redress any injury resulting from it. Thus, the Rooker-Feldman doctrine does not apply to the instant matter.

        2.      Res Judicata

The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, collectively "res judicata." Under the doctrine of claim preclusion, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claims raises the same issues as the earlier suit." New Hampshire v. Maine, 533 U.S. 742, 748 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment **even if the issue recurs in the context of a different claim.**" Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (citing New Hampshire, 532 U.S. at 748 (emphasis added)).

In this case, claim preclusion is not at issue as this proceeding and the state administrative proceeding seek to adjudicate two different claims, i.e. conduct unbecoming of a public employee in the state agency proceeding, and interference with FMLA leave in the instant proceeding. However, issue preclusion does exist:

> [W]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata . . .

University of Tennessee v. Elliot, 478 U.S. 788, 799 (1986) (citing Utah Construction & Mining Co., 384 U.S. 394, 422 (1966)). Thus, the question of issue preclusion arises in this case because the MSB has already made several factual determinations that would be necessary for this court to adjudicate in order to rule on Plaintiff's claim of interference with FMLA leave.

While the FMLA does not define interference, the Department of Labor regulations indicate that interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). In order to prevail on an FMLA interference claim, a plaintiff must show that "(1) he invoked his right to FMLA benefits, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his invocation of his rights." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004). Similarly, in determining whether Plaintiff was guilty of conduct unbecoming a public employee, during the state agency proceeding, the MSB needed to determine the propriety of Plaintiff's termination, i.e. whether she was terminated for abusing her sick leave. Therefore, although the moving party in the instant action alleges a different claim than the claim brought before the state agency, this Court would need to revise the findings of fact already made by the state agency in order to rule in the Plaintiff's favor. Essentially, the state agency's findings of fact that led to Plaintiff being found guilty of conduct unbecoming a public employee have foreclosed Plaintiff's ability to prevail on her interference claim.

In the state agency proceeding, the MSB ultimately concluded that "there is no dispute

that [Plaintiff] was using paid sick time, provided by the appointing authority as a benefit of employment, while she was engaged in and was compensated for secondary employment. It is axiomatic that such conduct is prohibited." See Decision of the Merit System Board, Def. Brief at Ex. 15. Thus, Plaintiff's claims are barred because in order to find Defendant guilty of interference with Plaintiff's FMLA leave, this Court would need to make findings of fact contrary to those already been made by the state agency. In doing so this Court would run afoul of issue preclusion.

Further, it is underscored, that Plaintiff had the option of appealing the MSB's ruling to the Appellate Division of the Superior Court of New Jersey. Her refusal to do so does not transform the United States District Court into an appropriate venue for Plaintiff to seek relief. Thus, for the reasons set forth above, Count I of Plaintiff's Complaint, Interference with FMLA Leave, is dismissed for lack of subject-matter jurisdiction.

    **B.    Count II: Violation of the First Amendment Right to Petition For Redress of Grievances Pursuant to 42 U.S.C. § 1983**

In order "to state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question protected by the first amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Blevis v. Lyndhurst Bd. of Educ., 2009 WL 3128402 at *5 (D.N.J. Sept. 28, 2009) (citing Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). The "first prong is a legal query, and the second prong is a determination of fact." Hill, 455 F.3d at 241. Plaintiff now makes a § 1983 claim against Defendant based on the alleged retaliatory acts of employees of the City of Plainfield.

Under § 1983, liability for a municipal entity, such as the City of Plainfield, must be

based on the theory announced in Monell v. Department of Social Services of New York, 436 U.S. 658, 690 (1978).  Under Monell, a party can pursue claims against a municipal entity if it can be shown that a policy or custom of the entity lead to a violation of plaintiff's rights.  Id.  A single unlawful act of an employee does not imply a policy, practice or custom sufficient to impose liability.  City of Oklahoma v. Tuttle, 471 U.S. 808 (1985).  A plaintiff can demonstrate a policy if a municipality "issues an official proclamation, policy, or edict" proximately causing the injury.  Watson v. Abington Twp., 478 F.3d 144, 155-56 (3d Cir. 2007).  To show conduct, a plaintiff must establish that the practice proximately causing an injury "is so well-settled and permanent as virtually to constitute law."  Id. at 156.  Custom can also be demonstrated by knowledge and acquiescence to a practice by an entity.  The fact that a municipal policy may lead to misconduct is not sufficient to fulfill the requisite causation element; an affirmative link is essential.  City of Oklahoma, 471 U.S. at 824 n.8.

      Plaintiff has failed to identify any policy, practice, or custom implemented by a policy maker, which deprived plaintiff of any constitutional right.  In fact, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment does not even address this argument.  Thus, Plaintiff has not only failed to meet her burden of establishing an affirmative link between the policy and her alleged deprivation, but rather, that a such a policy even existed.  As there are no facts on the record of any conduct under which this Court could impose liability under Monell, Defendant's motion for summary judgment as to Count II is granted.

## IV.    CONCLUSION

      For the foregoing reasons, Count I of Plaintiff's Complaint, Interference with FMLA Leave, is dismissed for lack of subject-matter jurisdiction; and, Defendant's motion for summary

judgment as to the remaining count is granted.  An appropriate order accompanies this opinion.

DATED: February 23, 2011

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE